## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. __ Civ. ____ |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| SCHULTZ CHAN (A/K/A JASON CHAN), | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendant Schultz Chan (a/k/a Jason Chan) ("Chan"), and alleges as follows:

### SUMMARY

1.      This case concerns insider trading by Chan, a Director of Biostatistics at a Massachusetts-based biopharmaceutical company ("PharmaCo"). Just weeks after joining PharmaCo in the summer of 2015, Chan used his employer's highly confidential clinical trial data to trade PharmaCo securities illegally in his own account and to tip others to trade in advance of the company's September 2015 announcement ("Announcement") of positive clinical study results for its lead drug candidate. As a result of his illicit trading of PharmaCo securities and tipping of others, Chan generated approximately $288,000 of profits in his own accounts and in the accounts of his tippees.

2.      In August 2015, Chan joined PharmaCo and obtained material nonpublic information concerning the clinical study results ("Study Results") for the company's lead drug candidate.

3.      Chan owed duties of trust and confidence to PharmaCo, which explicitly prohibited him from trading on the basis of material nonpublic information and from tipping others to trade on such information.  Despite these clear duties, Chan used his access to PharmaCo's Study Results to purchase PharmaCo shares in his own accounts in advance of the company's announcement of these positive results to the public.  Chan also tipped his wife and a friend ("Friend") to trade PharmaCo securities in advance of the Announcement.

4.      On September 8, 2015, after market close, PharmaCo announced that its lead drug candidate had achieved positive results for patients who received the drug candidate as part of a Phase 2 clinical study.  On the day after the Announcement, PharmaCo's stock price jumped from $7.81 (the closing price on September 8) to $11.36 (the closing price on September 9), which represented an increase of 45 percent.

5.      As a result of his illicit trading and tipping, Chan reaped approximately $68,000 in illegal profits, Chan's wife received approximately $115,000 in illegal profits, and the Friend received approximately $105,000 in illegal profits.

## VIOLATIONS

6.      By virtue of the conduct alleged here, Chan engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

7.      Unless Chan is permanently restrained and enjoined, he will again engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The Commission brings this action under the authority conferred upon it by

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].  The Commission seeks to permanently

enjoin Chan from engaging in the transactions, acts, practices, and courses of business alleged in

this Complaint, and seeks an order requiring Chan to disgorge all ill-gotten gains from the

unlawful insider trading activity as set forth in this Complaint, including his own insider trading

profits and the trading profits of his tippees, together with prejudgment interest.  The

Commission also brings this action, pursuant to Section 21A of the Exchange Act [15 U.S.C. §

78u-1], for civil penalties against Chan.  In addition, the Commission seeks an order barring

Chan from acting as an officer or director of any issuer that has a class of securities registered

pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports

pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to Sections 21A and 27 of the

Exchange Act [15 U.S.C. §§ 78u-1 &78aa].

10.     Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C.

§ 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this

Complaint occurred within the District of Massachusetts.  Among other things, venue lies in this

District because Chan resides within the District and executed his illegal insider trades from

within this District.  PharmaCo also employed Chan at its headquarters in Massachusetts.

## DEFENDANTS

11.     **Chan**, age 52, resides in Newton, Massachusetts.  Chan joined PharmaCo as a

Director of Biostatistics in August 2015.  Chan has almost twenty years of experience in the

biopharmaceutical industry and has previously worked for public companies.  Chan holds a

doctorate in statistics and a doctorate in mathematical physics.

## RELEVANT ENTITIES

12.     **PharmaCo** is a Delaware corporation listed on the NASDAQ stock market.

PharmaCo's principal place of business is Cambridge, Massachusetts.

## FACTS

### A.     Chan's Employment at PharmaCo and Duty of Confidentiality to PharmaCo

13.     On July 28, 2015, Chan accepted an offer of employment as a Director of

Biostatistics at PharmaCo.  PharmaCo hired Chan in part to help analyze the results of a clinical

study of the company's lead drug candidate.

*Chan's Duties of Confidentiality*

14.     As an employee of PharmaCo, Chan owed PharmaCo a duty to keep confidential

material nonpublic information about PharmaCo's clinical trial data, as well as a duty to refrain

both from trading on the basis of such information and from tipping such information to others.

15.     On August 9, 2015, in advance of starting his employment at PharmaCo, Chan

signed a document attesting to his agreement to abide by PharmaCo's Code of Business Conduct

and Ethics, which defined "[i]nside information" as "material, non-public information about

[PharmaCo] or another company that, if made public, would affect the price of a company's

securities" and stated in relevant part that "[e]mployees must never use inside information to

obtain any type of personal advantage."  The Code also referred to PharmaCo's Insider Trading

Policy, "which [wa]s deemed part of this Code."

16.     On Friday, August 14, 2015, PharmaCo sent an email to all PharmaCo employees

notifying them that a blackout period for trading in PharmaCo securities was in place effective

4

immediately in connection with the upcoming database lock for the Study Results. A copy of PharmaCo's Insider Trading Policy was attached to the message. The Insider Trading Policy in relevant part prohibited PharmaCo employees from trading in PharmaCo securities if they had awareness of "any material nonpublic information about the Company." The Insider Trading Policy defined "material information" to include "[c]linical trial data" and defined "[n]onpublic information" to include "information that is not generally known or available to the public." The Insider Trading Policy also prohibited PharmaCo employees from "tipping" others to trade, stating that PharmaCo employees "may not pass material nonpublic information on to others or recommend to anyone the purchase or sale of any securities when they are aware of such information."

17.     That day, the General Counsel also sent an email to all employees announcing the commencement of a "quiet period" on public communication regarding PharmaCo. The General Counsel's email explained that PharmaCo was imposing the "quiet period" in connection with the impending release of the Study Results. The General Counsel's email also instructed PharmaCo's employees not to share information regarding the clinical study with anyone outside of PharmaCo, including with relatives and close friends.

18.     On Monday, August 17, 2015, Chan started employment at PharmaCo. The August 14, 2015 emails concerning the trading blackout and nondisclosure requirement were already sitting in Chan's Outlook Inbox when he commenced work that day.

*Chan's Access to Material Nonpublic Information*

19.     Chan gained access to material nonpublic information through his work at PharmaCo.

20.    On or before August 19, 2015 and continuing through the week of August 24, 2015, Chan participated in several meetings and conversations in which he gained access to information concerning the Study Results.  Chan also had access to data concerning the Study Results during this time.

**B.    Chan Trades in PharmaCo, and Tips His Wife to Trade PharmaCo Securities**

21.    Starting on at least August 19, 2015, in breach of his duties to PharmaCo, Chan illegally traded PharmaCo securities in his own account and tipped others to trade in advance of the Announcement.

*Chan's Own Trades in PharmaCo Securities*

22.    On the basis of the material nonpublic information concerning the Study Results that he obtained through his employment at PharmaCo, Chan purchased PharmaCo shares.

23.    On the evening of August 19, 2015, at 9:47 p.m., Chan placed an order to purchase 5,900 PharmaCo shares in a retirement account.  The order successfully executed on the morning of August 20, 2015.

24.    That same morning, Chan transferred $50,000 from a bank account to a brokerage account.  At 6:27 a.m. on the morning of August 21, 2015, Chan entered an order to purchase 7,900 PharmaCo shares in that brokerage account.

*Chan Tips His Wife to Trade PharmaCo Securities*

25.    On or before August 24, 2015, in breach of his duties to PharmaCo, Chan also *tipp*ed his wife to trade in PharmaCo securities ahead of the Announcement.

26.    Over the course of the three-day period from Friday, August 21, 2015 through Sunday, August 23, 2015, Chan had at least nine telephone calls with his wife, who was living in a different state.

27.     On the morning of Monday, August 24, 2015, Chan had three calls with his wife at 8:16 a.m., 8:33 a.m., and 8:38 a.m.

28.     At 9:51 a.m., Chan's wife purchased 15,000 PharmaCo shares in one of her brokerage accounts.  Between 10:51 a.m. and 11:34 a.m., Chan and his wife had three calls.

29.     Later on August 24th, at 2:22 p.m., Chan's wife purchased an additional 3,500 PharmaCo shares in another of her brokerage accounts.  At 6:18 p.m., Chan and his wife spoke again.

30.     At 5:05 p.m. on August 25, 2015, Chan and his wife spoke for almost three minutes.  The next afternoon, at 12:25 p.m., Chan's wife purchased 5,000 PharmaCo shares in one of her brokerage accounts.

*Chan Tips His Friend to Trade PharmaCo Securities*

31.     In breach of his duties to PharmaCo, Chan also tipped his Friend to trade in PharmaCo securities ahead of the Announcement.  Chan's Friend, who also works in the pharmaceutical industry in Massachusetts, had previously lent Chan approximately $80,000.  Chan intended to, and did, benefit the Friend by tipping the Friend to trade PharmaCo securities.

32.     On Monday, August 24, 2015, Chan had five telephone calls with the Friend, including two calls at 1:36 p.m. and 6:36 p.m. for over three minutes each.  Chan and the Friend also exchanged a text message at 4:28 p.m. that afternoon.

33.     Over the next three days, Chan and the Friend had ten phone calls and exchanged eleven text messages.

34.     On Friday, August 28, 2015, Chan and the Friend had communications and the Friend executed trades in PharmaCo's securities.  After receiving two calls from Chan earlier in the day, the Friend purchased 20 PharmaCo call options at 3:10 pm.  At 3:16 p.m., the Friend

purchased 3,000 PharmaCo shares. Later, at 3:49 p.m., Chan and the Friend exchanged a text message. At 3:53 p.m., the Friend sold 20 PharmaCo put options.

35.    The Friend also made additional transactions the next week. On Monday, August 31, 2015, the Friend purchased an additional 12,475 PharmaCo shares. On September 1, 2015, the Friend purchased an additional 5,000 PharmaCo shares. On September 3, 2015, Chan and the Friend spoke and exchanged a text message. The next day, September 4, 2015, the Friend purchased an additional 2,965 PharmaCo shares.

C.    **PharmaCo's September 8, 2015 Announcement**

36.    After market close on September 8, 2015, PharmaCo announced positive top-line clinical study results for its lead drug candidate, stating that the drug candidate "demonstrated a favorable safety profile with no drug-related serious adverse events and no deaths."

37.    Following the Announcement, PharmaCo's stock price rose dramatically. On September 9, 2015, the day after the Announcement, PharmaCo's stock closed at $11.36, which represented an increase of approximately 45 percent over the pre-Announcement closing price. PharmaCo's equity trading volume on September 9, 2015 was 1,532 percent greater than the prior day's trading volume.

38.    As a result of his illicit trading and tipping in PharmaCo, Chan reaped approximately $68,000 in illegal profits; his wife received approximately $115,000 in illegal profits; and the Friend received approximately $105,000 in illegal profits.

39.    In total, the insider trading scheme generated approximately $288,000 in illicit profits from PharmaCo trades made in Chan's own accounts and in the accounts of his tippees.

**CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

40.    Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

41.     Chan knew or was reckless in not knowing that the information that he obtained from PharmaCo was material and nonpublic, and that he owed a duty to PharmaCo to keep the information confidential and to refrain both from trading on it and from tipping it.

42.     Chan breached a duty to PharmaCo by trading for his own benefit on the basis of material nonpublic information that he had obtained from PharmaCo and by tipping this information to his wife and the Friend.

43.     Chan intended to benefit his wife and the Friend by tipping them and intended both of them to trade on the basis of his tips.

44.     Chan had a meaningfully close personal relationship with his wife and with the Friend.  Chan tipped his wife and the Friend in exchange for, or in anticipation of, receiving personal benefits.

45.     At all times, Chan acted with scienter.

46.     By virtue of the foregoing, Chan, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

47.     By reason of the conduct described in this Complaint, Chan directly or indirectly violated and, unless restrained and enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Chan and his respective agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Directing Chan to disgorge, with prejudgment interest, all ill-gotten gains from the conduct alleged in this Complaint, including his own ill-gotten trading profits and the trading profits of his tippees, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)];

### III.

Directing Chan to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

### IV.

Barring Chan, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)]; and

## V.

Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Dated: Boston, Massachusetts
      June 14, 2016

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISION**

By its attorneys,

6-14-16

Martin F. Healey (BBO #227550)
Regional Trial Counsel
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch Street, 23rd Floor
Boston, MA 02110-1424
(617) 573-8952 (Healey)
healeym@sec.gov

Joseph G. Sansone (NY Bar # 4043659)
Charles D. Riely (NY Bar # 4091609)
Charu A. Chandrasekhar (NY Bar # 4325387)
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0517 (Sansone)
sansonej@sec.gov