UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-11106-ADB |
| SCHULTZ CHAN (A/K/A JASON CHAN), | * * * | |
| Defendant. | * * * | |

**MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

This SEC action arises out of a government investigation of an insider trading scheme involving publicly traded shares of the Massachusetts-based biopharmaceutical company Akebia Therapeutics, Inc. ("Akebia").  In a related criminal case, Defendant Schultz Chan ("Chan"), and his codefendant Songjiang Wang ("Wang"), were, inter alia, convicted of orchestrating an insider trading and tipping scheme that lasted from November 2013 to September 2015.  Both the criminal and civil cases are based, at least in part, on Chan purchasing his employer's stock and advising Wang to do the same while Chan was in possession of insider information concerning the results of Akebia's clinical trials.  [ECF No. 34 ¶ 11; ECF No. 35-2 ¶ 6; ECF No. 42-1 at 15].

Pending before the Court is the SEC's motion for summary judgment.  [ECF No. 32].
For the following reasons, the motion, [ECF No. 32], is GRANTED.

## I.      BACKGROUND

### A.      Factual Background

The following facts are either uncontroverted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, or stated in the light most favorable to the non-movant on each issue. On August 17, 2015, Chan was hired as Akebia's Director of Biostatistics.  [ECF No. 34 ¶ 18]. At that time, Wang was the Director of Statistical Programming at Merrimack Pharmaceuticals, Inc. ("Merrimack").  [Id. ¶ 9].  Akebia's Insider Trading Policy mandated that "no employee was permitted to trade the company's stock while in possession of material nonpublic information, and that no employee was permitted to disclose material nonpublic information to others who might buy or sell securities on the basis of that information."  [Id. ¶ 13].  Merrimack employed a similar policy.  [ECF No. 34 ¶¶ 12–13].  Wang violated Merrimack's policy when he shared Merrimack's material nonpublic information with Chan, who then purchased Merrimack stock. [ECF No. 35-2 ¶ 24].  The Merrimack trades were charged in the criminal case, but not the civil one.

Relevant to this civil action, Chan purchased nearly 14,000 shares of Akebia stock before the company announced in September 2015 that its drug candidate Vadadustat had achieved positive results in a clinical trial, [ECF No. 34 ¶¶ 15–16, 20–22], and instructed his wife[1] and

---

[1] The SEC asserts that Chan's wife purchased over 23,000 shares of Akebia stock in her own name before the announcement, leading to approximately $115,000.00 in profits.  [ECF No. 1 ¶¶ 25–30; ECF No. 1 ¶¶ 5, 38].  Because "Chan's tipping of his wife was not one of the charges against him in the Criminal Case," [ECF No. 33 at 11], and "it is not clear that the verdict rendered against Chan in the Criminal Case incorporated this misconduct," the SEC "does not intend to pursue this portion of its claim if its Summary Judgment Motion is granted."  [ECF No. 33 at 18 n.8].  Accordingly, the Court need not address the allegations concerning Chan's wife in ruling on the instant summary judgment motion.

Wang[2] to do the same, [id. ¶ 24].  Following this announcement, on September 8, 2015, the share

price of Akebia's stock increased by forty-five percent, [id. ¶ 14], resulting in a gain of

approximately $68,699.00 for Chan.[3,4]  [Id. ¶¶ 14, 23].

The Government filed a criminal complaint against Chan and Wang in the District of

Massachusetts on June 13, 2016, based on their trading activity.  [ECF No. 33 at 6].   On June 5,

2018, Chan was charged in a four-count second superseding indictment ("SSI") with (1)

conspiracy to commit securities fraud; (2) insider trading related to Chan's trading in Merrimack

securities; (3) insider trading related to Wang's trading in Akebia securities; and (4) insider

trading related to Chan's trading in Akebia securities.  [ECF No. 35-2 at 9–15].  On July 10,

2018, Chan was convicted on all four counts and sentenced to a term of thirty-six months'

imprisonment, a $65,000.00 fine, and restitution of $153,428.72.  [Id.].[5]  The court in the

criminal proceeding did not order the forfeiture of Chan's profits.[6]  [Id. at 7].  Chan's appeal of

his conviction is currently pending.  [Id.].

---

[2] Wang purchased over 20,000 Akebia shares and 20 Akebia call options between August 28 and September 4, 2015.  [ECF No. 34 ¶ 24].

[3] Wang received approximately $108,011.00 in profits.  [ECF No. 34 ¶ 24; ECF No. 33 at 18 n.8].

[4] The SEC calculated Chan's profits from his trading of Akebia's securities by "calculat[ing] the difference between the price that [Chan] paid for his purchases of Akebia stock on August 19 and 21, 2015 prior to the Announcement, and the value of Akebia's stock when the market closed on September 9, 2015 (i.e., the first trading day after the Announcement)."  [ECF No. 35 ¶ 11].

[5] Wang was indicted on and convicted of Counts One, Two, and Three.  [ECF No. 33 at 6].  He was sentenced to a term of six months' imprisonment, a $50,000.00 fine, and restitution of $17,047.64.  [Id. at 6 n.3].

[6] The Government has appealed this aspect of the trial court's decision.  [ECF No. 33 at 17 n.7].

**B.      Procedural History**

On June 14, 2016, one day after the Government filed its criminal complaint against

Chan, the SEC filed the instant civil complaint ("the Complaint").  [ECF No. 1; ECF No. 33 at

6].  According to the SEC, the Complaint "is based on the same factual allegations" as Counts

Three and Four of the SSI.  [Id.].  This Court stayed the civil proceeding during the pendency of

the parallel criminal action.  [ECF No. 10].

On June 13, 2019, following the resolution of the criminal case, the Court granted the

SEC's motion to lift the stay on the instant civil proceeding, [ECF No. 21], and the SEC filed its

motion for summary judgment, which Chan opposed, [ECF No. 32; ECF No. 42].

## II.      LEGAL STANDARD

Summary judgment may be granted where the moving party shows "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A fact is material where it "affect[s] the outcome of the suit under

the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine

issue of material fact arises if "the evidence with respect to the material fact in dispute 'is such

that a reasonable jury could return a verdict for the nonmoving party.'"  SEC v. Weed, 315 F.

Supp. 3d 667, 673 (D. Mass. 2018) (quoting Anderson, 477 U.S. at 248).

If the moving party demonstrates that there is no genuine dispute of material fact, the

burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine

issue for trial."  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The Court views "the

record in the light most amiable to the nonmovants and indulge[s] all reasonable inferences

favorable to them."  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).  The granting of

summary judgment is "appropriate if, after viewing the record in the non-moving party's favor,

the Court determines that no genuine issue of material fact exists and that the moving party is

entitled to judgment as a matter of law." Weed, 315 F. Supp. 3d at 673.

## III.   DISCUSSION

The SEC contends that Chan is collaterally estopped from disputing the facts that formed

the basis of his criminal conviction, which are sufficient to prove the violations alleged in the

Complaint.   [ECF No. 33 at 8, 10–13].   Collateral estoppel, or issue preclusion, "bars parties

from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding"

where the current litigation involves a party to the earlier proceeding.  Robb Evans & Assocs.,

LLC v. United States, 850 F.3d 24, 31 (1st Cir. 2017).  The party that seeks to invoke collateral

estoppel must establish

> (1) the issue sought to be precluded in the later action is the same as that
> involved in the earlier action; (2) the issue was actually litigated; (3) the issue
> was determined by a valid and binding final judgment; and (4) the
> determination of the issue was essential to the judgment.

Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007).

"It is well established that a prior criminal conviction may work an estoppel in favor of

the Government in a subsequent civil proceeding."[7]  Emich Motors Corp. v. General Motors

Corp., 340 U.S. 558, 568 (1951).  Therefore, "it is appropriate to estop a party from relitigating

issues actually and necessarily decided as part of a prior criminal judgment and conviction, in

part because '[t]he government bears a higher burden of proof in the criminal than in the civil

context.'"  SEC v. Namer, No. 97-cv-02085, 2004 WL 2199471, at *4 (S.D.N.Y. Sept. 30, 2004)

---

[7] "Although the SEC is not the same party as the [Government], it has been permitted to rely on
the estoppel effect of criminal convictions secured by the [Government] in seeking summary
judgment in securities actions."  SEC v. Illarramendi, 260 F. Supp. 3d 166, 176 (D. Conn. 2017);
see also SEC v. Muraca, No. 17-cv-11400, 2019 WL 6619297, at *7 (D. Mass. Dec. 5, 2019)
(explaining that the SEC is permitted to use a "defendant's prior conviction to subsequently
establish civil liability based on principles of issue preclusion").

(citing Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 43 (2d Cir. 1986)), aff'd, 183 F. App'x 120 (2d Cir. 2006) ; see also Weed, 315 F. Supp. 3d at 674 ("It is well-settled that a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the [Government] in a subsequent civil proceeding as to those matters determined by judgment in the criminal case." (quoting United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978))).

### A.    Chan's Defenses

Chan argues that collateral estoppel is inappropriate in this case because (1) he has appealed his criminal conviction, (2) there were alleged errors at trial, and, (3) the Government presented inconsistent theories at trial.

#### 1.    Chan's Pending Appeal

Chan argues that it would be inappropriate for this Court to grant summary judgment in reliance on the criminal conviction because that criminal conviction is currently pending appeal. [ECF No. 42 at 2–4].

"The pendency of a criminal appeal or habeas petition seeking post-trial relief 'generally does not deprive a criminal judgment of its preclusive effect.'" Weed, 315 F. Supp. 3d at 674 (quoting United States v. Int'l Bhd. of Teamsters, 905 F.2d 610, 621 (2d Cir. 1990)). "The general rule applies—in most jurisdictions—even where the first, or issue preclusive, judgment is still on appeal when the second action occurs." In re Kane, 254 F.3d 325, 328 (1st Cir. 2001) (first citing Ruyle v. Cont'l Oil Co., 44 F.3d 837, 846 (10th Cir. 1994), and then citing Bartlett v. Pullen, 586 A.2d 1263, 1265 (Me. 1991)); see also Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 188–89 (1941) ("[T]he general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality.").

The SEC is routinely granted summary judgment on a defendant's liability in civil actions where a defendant has appealed the underlying criminal action that has determined the defendant's guilt.  See, e.g., SEC v. Resnick, 604 F. Supp. 2d 773, 779 (D. Md. 2009) (explaining that the fact that the defendant had "appealed his criminal conviction d[id] not affect the finality of that judgment for purposes of collateral estoppel"); SEC v. Blackwell, 477 F. Supp. 2d 891, 901 (S.D. Ohio 2007) ("Allowing Defendants to avoid the preclusive effect of the Criminal Action until their appeal is finalized would halt the process of justice."); SEC v. Pace, 173 F. Supp. 2d 30, 33 (D.D.C. 2001) ("The fact that [defendant's] appeal from his conviction is still pending does not affect the application of collateral estoppel.").  Accordingly, the preclusive effect of the criminal conviction is not impacted by the fact that the conviction is being appealed.

2.    Alleged Errors at Trial

Next, Chan argues that alleged errors at his criminal trial make collateral estoppel inappropriate in this case.  Chan claims that Counts One and Two of the indictment alleged that Wang possessed material nonpublic information about Merrimack in the form of three studies but that "the evidence at trial only proved that Wang possessed" one study that contained material nonpublic information about Merrimack.  [ECF No. 42 at 3].  He argues that this variance allowed the Government to introduce evidence relative to Counts One and Two about "a series of structured bank transactions made by [Wang] which occurred outside the scope of the evidence of a conspiracy," [id. at 3], and that prejudicial spillover from this evidence tainted the verdict on Count Four, [ECF No. 42-1 at 59].  Consequently, Chan contends that Count Four of the indictment, related to Chan's insider trading of Akebia's securities, was "based upon

evidence of alleged crimes that should not have been admitted in the criminal case . . . which would not be admissible in a trial on the SEC complaint."  [ECF No. 42 at 2].

"[A]lleged procedural trial errors," such as those involving improper admission of evidence, "are appellate issues" that do not implicate collateral estoppel.  Blackwell, 477 F. Supp. 2d at 901–02; see Resnick, 604 F. Supp. 2d at 781 (noting that questions surrounding improper admission of evidence in underlying criminal proceeding were "appellate issues for the Second Circuit to address"); see also SEC v. Stanford Int'l Bank, Ltd., No. 3:09-cv-00298, 2013 WL 12360438, at *3 (N.D. Tex. Apr. 25, 2013) ("[E]ven if [defendant's] criminal proceeding was constitutionally infirm—a matter on which the Court expresses no opinion—such arguments are questions for the appellate court in the criminal procedure.").  Therefore, any alleged procedural errors at trial are insufficient to bar collateral estoppel in this case.

        3.    Inconsistent Theories

Chan next argues that collateral estoppel is not appropriate here because the Government presented inconsistent theories during the criminal trial.  [ECF No. 42 at 1–2].  Chan asserts that Counts One, Two, and Three of the indictment are "premised on the theory" that Chan obtained material nonpublic information from Akebia and then shared this information with Wang, ultimately resulting in Wang illegally trading Akebia shares and Chan illegally trading Merrimack shares.  [Id.].  Chan believes this theory to be inconsistent with Count Four, which charges Chan with insider trading in relation to his own trading in Akebia's securities.  [Id.]. While Chan does not specify how these theories are inconsistent, the Court assumes that he means to argue that there is something improper about Counts One, Two, and Three charging conduct related to Chan and Wang trading in the securities of the other's employer, and Count Four relating to Chan trading in the securities of his own employer.

Generally, the doctrine of judicial estoppel, or "preclusion of inconsistent positions," acts to keep the same party "from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987). The party seeking to invoke judicial estoppel must show "that the party to be estopped 'succeeded previously with a position directly inconsistent with the one [it] currently espouses.'" In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004) (quoting Lydon v. Bos. Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999)). Although Chan does not specifically argue this, the Court notes that securities fraud defendants have been unsuccessful in asserting in this Circuit that the SEC should be judicially estopped from asserting different theories at different proceedings. See SEC v. Happ, 392 F.3d 12, 19–21 (1st Cir. 2004) (affirming district court's decision that judicial estoppel was not applicable where SEC asserted different theories at pretrial proceedings and  at trial where the theories were not directly inconsistent); SEC v. Muraca, No. 17-cv-11400, 2019 WL 6619297, at *7 (D. Mass. Dec. 5, 2019) (noting that judicial estoppel was inappropriate where the Government portrayed defendant company as victim of fraud scheme and SEC portrayed investors as victim of scheme as "[b]oth propositions [were] true, and [did] not contradict one another").

Here, Chan has failed to demonstrate any inconsistency in allegations that Chan engaged in insider trading by participating in the Merrimack scheme with Wang, and as relevant here, both tipping Wang as to material nonpublic information about Akebia as alleged in Count Three and purchasing his own Akebia securities based on material nonpublic information about Akebia as alleged in Count Four. See [ECF No. 42 at 1–2]. It is not clear how it is inconsistent to argue that Chan both sought to profit personally from trading on the material nonpublic information and also improperly shared the material with Wang or induced Wang to trade. Chan has failed to

argue that the SEC has presented inconsistent theories that would justify this court finding that judicial estoppel is warranted.

>   **B.**      **The Criminal Case Involved the Same Issues**

"[T]he elements necessary to establish civil liability under Section . . . 10(b) are identical to those necessary to establish criminal liability under Section 10(b)." Weed, 315 F. Supp. 3d at 675 (quoting SEC v. Haligiannis, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007)).  Courts therefore routinely apply collateral estoppel where a defendant seeks to litigate civil liability for a securities fraud violation after a criminal conviction.  See id. (holding that defendant was collaterally estopped from litigating civil liability for violations of 15 U.S.C. §§ 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5 where jury convicted defendant of violations in separate criminal action); see also SEC. v. Desai, 145 F. Supp. 3d 329, 334 (D.N.J. 2015) (defendant collaterally estopped from litigating civil liability for violations of 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 15 U.S.C. § 78o(a), 15 U.S.C §§ 80b-6(1), 80b-6(2), and 17 C.F.R. § 240.10b-5 after pleading guilty to violations in parallel criminal proceeding), aff'd, 672 F. App'x 201 (3d Cir. 2016); Haligiannis, 470 F. Supp. 2d at 382 (defendant collaterally estopped from litigating civil liability for violations of 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5 where defendant pled guilty to such violations in criminal proceeding).  Accordingly, whether the Court should apply collateral estoppel in the instant civil case depends on whether the SSI and the Complaint charge the same conduct and rely on the same factual allegations.

>   1.      The Allegations in the Complaint

The SEC alleges that Chan violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  [ECF No. 1 at 8–9].  Under Section 10(b), a securities fraud violation occurs where an individual "'use[s] or employ[s], in connection with the purchase or sale of any security . . .

any manipulative or deceptive device or contrivance in contravention of' rules promulgated by the SEC." SEC v. Rocklage, 470 F.3d 1, 6 (1st Cir. 2006) (quoting 15 U.S.C. § 78j(b)).  Rule 10b-5 makes it unlawful to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(c).

A claim under section 10(b) and Rule 10b-5 requires that a plaintiff demonstrate "(1) a material representation or omission or manipulative action, such as a scheme to defraud, (2) in connection with the purchase or sale of a security, (3) with scienter, or a wrongful state of mind and (4) the use of interstate commerce." Weed, 315 F. Supp. 3d at 675 (first citing 15 U.S.C. § 78j(b), then citing 17 C.F.R. § 240.10b-5, and then citing SEC v. Ficken, 546 F.3d 45, 48 (1st Cir. 2008)).  The scienter required for a violation is "an intention 'to deceive, manipulate, or defraud.'" Flannery v. SEC, 810 F.3d 1, 9 (1st Cir. 2015) (citing Ficken, 546 F.3d at 47).

## 2.     The Facts Found by the Jury in the Criminal Case

The Indictment generally alleged that Chan "obtained material, nonpublic information concerning the clinical trials of a drug made by his employer, Akebia, and breached" his duty not to disclose that information "by trading in Akebia securities while in possession of the material, nonpublic information."  [ECF No. 35-5 at 9–10].  Count Three of the SSI alleged that Chan "willfully engag[ed] in a scheme to trade in Akebia securities while in possession of material, nonpublic information Chan obtained from Akebia and provided to Wang."  [ECF No. 35-2 ¶ 31 (emphasis omitted)].  The SSI further alleged that Chan owed his employer, Akebia, "a duty to keep confidential material nonpublic information about [the company's] clinical trial data, as well as a duty to refrain from trading on the basis of such information and from tipping such information to others."  [ECF No. 1 ¶ 14]; see [ECF No. 35-2 ¶ 20].  The jury convicted Chan of

Count Three, [ECF No. 35-3 at 2], and found that the Government had proven beyond a reasonable doubt that Chan provided Wang with material, nonpublic information about Akebia's clinical trial results, and that Wang used the information to purchase Akebia securities.  [ECF No. 1 ¶¶ 15–21, 31–35; ECF No. 35-2 ¶¶ 18–20, 23–24].  Count Four of the SSI also alleged that Chan "willfully engag[ed] in a scheme to trade in Akebia securities while in possession of material, nonpublic information Chan obtained from Akebia" by personally purchasing Akebia stock.  [ECF No. 35-2 ¶ 33 (emphasis omitted)].  As with Count Three, in finding Chan guilty of Count Four, the jury determined beyond a reasonable doubt that Chan engaged in a scheme to defraud Akebia.  [ECF No. 35-3 at 3].

Regarding scienter, the jury instructions applicable to both counts specifically instructed that the jury could only convict Chan if it determined that the Government had proven beyond a reasonable doubt that Chan "participated in the scheme to defraud, that is, the insider trading scheme . . . knowingly, willfully and with intent to defraud."  [ECF No. 35-5 at 16].  Finally, the jury was instructed that it could only convict Chan if it had determined that the Government had proven beyond a reasonable doubt that Chan accomplished the insider trading scheme "by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange."  [ECF No. 35-2 at ¶¶ 31, 33]; see also Weeks v. Angelone, 528 U.S. 225, 234 (1990) ("A jury is presumed to follow its instructions.").

3.   The Counts in the Civil Complaint Are Based on the Same Allegations as Chan's Criminal Conviction

The criminal jury found beyond a reasonable doubt that Chan committed insider trading in violation of Section 10b and Rule 10b-5 both by purchasing Akebia stock for himself, Count Four, and directing Wang to do the same, Count Three.  The SEC's civil complaint alleges the same underlying conduct, namely that Chan traded Akebia's securities in August 2015 based on

insider information.    [ECF No. 35-3 at 2].  Consequently, Chan's liability for the insider trading

scheme at issue here has already been fully resolved on the merits.  "Because the sole issues of

importance in this pending civil matter have already been conclusively determined by a jury,"

Chan is collaterally estopped from re-litigating his liability under the SEC's claim that he

violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  SEC v. Patterson, No. 03-cv-00302,

2006 WL 770626, at *3 (N.D. Okla. Mar. 23, 2006) (applying collateral estoppel where

defendant's liability had already been determined by criminal adjudication of guilt); see also

Weed, 315 F. Supp. 3d at 675 ("One of the frauds alleged by the SEC in this civil action is the

same as the fraud for which [defendant] was convicted in the criminal proceeding, making

collateral estoppel applicable here."); Desai, 145 F. Supp. 3d at 334 ("The acts that were the

predicate of [defendant]'s guilty plea in the parallel criminal action are also the same alleged acts

in the instant civil action.").  Summary judgment on the issue of Chan's liability is therefore

appropriate.

### C.      Remedies

The SEC seeks the following remedies: (1) a permanent officer and director bar; (2) a

permanent injunction enjoining Chan from future violations of Section 10(b) and Rule 10b-5; (3)

civil penalties under Section 21A of the Act, 15 U.S.C. § 78u-1; and (4) disgorgement of Chan's

gains from the insider trading activity with prejudgment interest.  [ECF No. 1 ¶ 8; ECF No. 33 at

14].  Chan does not address the SEC's requested relief in his opposition to summary judgment.

See generally [ECF No. 42].

### 1.      Permanent Officer and Director Bar

Generally, "[c]ourts have the authority to 'prohibit, conditionally or unconditionally, and

permanently or for such period of time as [they] shall determine, any person who violated [the

anti-fraud provisions of securities laws] from acting as an officer or director of any [public company] if the person's conduct demonstrates unfitness to serve as an officer or director . . . .'" SEC v. Bio Def. Corp., No. 12-cv-11669, 2019 WL 7578525, at *34 (D. Mass. Sept. 6, 2019) (alteration in original) (citing 15 U.S.C. §§ 77t(e), 78u(d)(2)). "The application of the officer and director bar is within the court's 'substantial discretion.'" SEC v. Spencer Pharm. Inc., No. 12-cv-12334, 2015 WL 5749436, at *8 (D. Mass. Sept. 30, 2015) (quoting SEC v. Selden, 632 F. Supp. 2d 91, 96–97 (D. Mass. 2009)).

A lifetime officer and director bar is an "extraordinary remedy, usually reserved for those defendants who engaged in prior securities violations, and under circumstances suggesting the likelihood of future violations." SEC v. Boey, No. 07-cv-00039, 2013 WL 3805127, at *3 (D.N.H. July 22, 2013) (citing SEC v. Dibella, No. 3:04-cv-1342, 2008 WL 6965807, at *10–11 (D. Conn. Mar. 13, 2008), aff'd, 587 F.3d 553 (2d Cir. 2009)). "[B]efore imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." SEC v. Patel, 61 F.3d 137, 142 (2d Cir. 1995). Courts in this Circuit have largely followed this approach. Compare SEC v. Johnston, 368 F. Supp. 3d 247, 253 (D. Mass. 2019) (imposing a two-year bar where first-time offender took part in scheme involving fraudulent misrepresentations but had minimal economic stake in scheme), and Boey, 2013 WL 3805127, at *3 (imposing a five-year bar where first-time offender had "modest economic stake" in scheme and had "small risk of recidivism"), and Selden, 632 F. Supp. 2d at 100 (imposing two-year bar where first-time offender, who had significant economic stake in a complex fraud scheme that lasted multiple years, had already been ordered to pay $1,166,417.00 in disgorgement and civil penalties), with Bio Def. Corp., 2019 WL 7578525, at

*34 (imposing a permanent bar where defendants participated in two-year boiler-room fraud against investors in which millions of dollars were lost), and Weed, 315 F. Supp. at 676–78 (imposing a permanent bar where defendant played "essential" role involving multiple misrepresentations in pump-and-dump scheme that was run four times), and SEC v. Smith, No. 14-cv-00192, 2015 WL 4067095, at *10 (D.N.H. July 2, 2015) (imposing a permanent bar where the defendant participated in multi-year scheme in which he convinced investors to invest, and lose, approximately $2,000,000.00).

Though "courts within the First Circuit have had little occasion to interpret [15 U.S.C. § 78u(d)(2)] . . . the analysis outlined by the Second Circuit Court of Appeals in SEC v. Patel is appropriate" for evaluating whether an officer and director bar should be imposed. Selden, 632 F. Supp. 2d at 96–97 (citing Patel, 61 F.3d at 140–42). Under Patel, courts look to "(1) the egregiousness of the underlying securities law violation, (2) whether defendant was a repeat offender, (3) defendant['s] role in the fraud[,] (4) defendant's degree of scienter, (5) defendant's economic stake in the fraud[,] and (6) the likelihood that misconduct will recur" due to the defendant's occupation. Weed, 315 F. Supp. 3d at 677 (citing Patel, 61 F.3d at 141).

a)      Egregiousness

An insider trading violation is egregious where it (1) is "'flagrant and deliberate' as opposed to 'merely technical in nature,'" (2) is "a breach of a fiduciary duty," (3) causes "significant financial losses" to others, or (4) arises "out of a complex or elaborate scheme to defraud." SEC v. Gunn, No. 3:08-cv-01013, 2010 WL 3359465, at *4 (N.D. Tex. Aug. 25, 2010) (citations omitted). Insider trading is generally considered an egregious violation. Gunn, 2010 WL 3359465, at *4 ("Insider trading is a flagrant, deliberate, and serious violation of the federal securities laws; in no sense is it merely technical." (internal citations omitted)). Relevant to this determination are factors such as whether the violation was part of a pattern of conduct

that extended over a period of several years.  <u>Selden</u>, 632 F. Supp. 2d at 97 (citing <u>SEC v.</u>

<u>Maxxon, Inc.</u>, No. 02-cv-00975, 2005 WL 6090229, at *5 (N.D. Okla. Mar. 11, 2005)).  Further,

if "the defendant did not personally profit from his violation, or the defendant's personal profits

from the violation were *de minimis*," then the violation be considered less egregious.  <u>Gunn</u>,

2010 WL 3359465, at *4 (citing <u>SEC v. Sargent</u>, 329 F.3d 34, 39 (1st Cir. 2003)); <u>see also</u> <u>SEC</u>

<u>v. Bankosky</u>, No. 12-cv-01012, 2012 WL 1849000, at *2 (S.D.N.Y. May 21, 2012) (noting that

defendant's conduct was not egregious where defendant operated two-year insider trading

scheme with a total profit of $63,000.00), <u>aff'd,</u> 716 F.3d 45 (2d Cir. 2013); <u>SEC v. Jacobs</u>, No.

13-cv-1289, 2014 WL 12768507, at *3 (N.D. Ohio Dec. 3, 2014) (finding that defendant's

conduct was not egregious where he made a single trade on his employer's material, nonpublic

information for a profit of $49,457.21).

Here, Chan's insider trading in breach of his fiduciary duty to Akebia was egregious

given the nature of the scheme, that it occurred over a period of approximately twenty-two

months and the fact that it involved both personal trading and inducing others to trade as well.

Though Chan's profits of $68,699.00 are relatively low when compared to other securities fraud

schemes, the ongoing nature of his offense and the serious breach of his fiduciary duty with

Akebia supports imposing an officer and director bar.

b)  Repeat Offender

An officer and director bar may be inappropriate where the offense is the defendant's

"first and only violation of securities law[]."  <u>Selden</u>, 632 F. Supp. 2d at 98; <u>see also</u> <u>SEC v.</u>

<u>Ingoldsby</u>, No. 88-cv-01001, 1990 WL 120731, at *2 (D. Mass. May 15, 1990) (declining to

issue an injunction where "[defendant's] infraction of the securities law was an isolated event,

16

and the SEC has presented no evidence of either prior or subsequent violations by the defendant").

Here, the SEC does not assert that Chan committed any violations of securities law outside of those contained in the criminal proceeding and no evidence has been presented that Chan is a repeat offender. See [ECF No. 33 at 14–15]. While Chan's twenty-two-month insider-trading scheme may not have been an "isolated event," it is undisputed that the violations at issue were Chan's only violations of securities law. Ingoldsby, 1990 WL 120731, at *2 (noting that defendant's single purchase of stock in violation of securities laws was an "isolated event"); [ECF No. 33 at 14–15; ECF No. 34 ¶ 11]. Accordingly, this factor weighs against issuing an officer and director bar.

c)      Role in the Fraud

The Court must also consider whether Chan had a leadership role in the scheme to defraud. See, e.g., SEC v. Scott, No. 13-cv-05113, 2015 WL 13742024, at *17 (E.D.N.Y. July 15, 2015) (imposing permanent bar where defendant, as "founder, owner and sole officer" of company, "had central role" in the securities fraud violations); SEC v. Cole, No. 12-cv-8167, 2014 WL 4723306, at *7 (S.D.N.Y. Sept. 22, 2014) (noting that defendants, who were "heads" of the company, had "leadership roles in the fraud" and imposing permanent bar), aff'd, 661 F. App'x 52 (2d Cir. 2016). The Court may also consider whether the defendant took advantage of his position within the defrauded company to commit the offense. Patel, 61 F.3d at 141 (noting that defendant used "his position as officer and director" of the company to accomplish securities fraud scheme); see also Jacobs, 2014 WL 12768507, at *5 (declining to impose a bar where defendant obtained insider information through his personal relationship, not his executive

17

status).  Courts also evaluate whether the defendant's employer specifically forbade "employees from trading based on material nonpublic information."  Bankosky, 2012 WL 1849000, at *2.

Here, though Chan was not an officer of Akebia, his role as "Director of Biostatistics" granted him access to material, nonpublic information.  [ECF No. 33 at 16; ECF No. 34 ¶ 20].  Additionally, Akebia had a clear insider trading policy which Chan violated.  [ECF No. 34 ¶¶ 13, 15–16].  See Bankosky, 2012 WL 1849000, at *2, *4 (imposing ten-year bar where defendant traded on material, nonpublic information in violation of employer's policy).  This factor supports an officer and director bar.

### d)    Degree of Scienter

Chan's criminal conviction establishes that he acted with a high degree of scienter.  See Gunn, 2010 WL 3359465, at *5 (finding that a defendant who violated section 10(b) and Rule 10b-5 "'knew, should have known, or was severely reckless in not knowing' that he was trading on material nonpublic information" (citation omitted)); see also Ingoldsby, 1990 WL 120731, at *2 (noting that "the jury found the defendant acted with the requisite scienter, violating the insider trading laws with knowing, willful and intentional conduct").  Accordingly, this factor weighs in favor of imposing an officer and director bar.

### e)    Economic Stake in the Fraud

A defendant possesses a sufficient economic stake for the purpose of imposing a bar where he trades on inside information in his personal account.  Bankosky, 2012 WL 1849000, at *1, *3.  Where a defendant's economic stake is relatively modest, however, courts have declined to impose a permanent bar.  Boey, 2013 WL 3805127, at *3 (imposing a five-year bar where defendant had "modest economic stake in the violation" amounting to a profit of $29,576.40).  Here, Chan's profits of $68,699.00 are relatively modest when compared to other schemes.

Compare id., with Shah, 1993 WL 288285, at *7 (declining to impose a bar where defendant's avoidance of the loss of $121,340.00 though illegal securities sales was "relatively small"), and Scott, 2015 WL 13742024, at *17 (imposing permanent bar where defendant gained "hundreds of thousands of dollars" from defrauding investors), and SEC v. Zubkis, No. 97-cv-08086, 2000 WL 218393, at *11 (S.D.N.Y. Feb. 23, 2000) (imposing permanent bar where defendant "knowingly orchestrated a securities fraud that netted several million dollars and from which he stood to profit personally"), and SEC v. Chester Holdings, Ltd., 41 F. Supp. 2d 505, 529–30 (D.N.J. 1999) (imposing permanent bar where defendant profited $2,106,185.14 from securities fraud scheme).  Accordingly, this factor weighs against the issuance of an officer and director bar against Chan or is neutral.

<blockquote>

f)      Likelihood that Misconduct Will Recur Given Defendant's Occupation
</blockquote>

In considering Chan's likelihood of recidivism, the Court "focuses on the potential for securities-laws violations inherent in the defendant's occupation, not on the particulars of the defendant's past misconduct."  Gunn, 2010 WL 3359465, at *7.  Where a defendant's occupation involves the sale of securities, id., or provides a defendant with access to material, nonpublic information about a public company, a court may assume that the defendant is likely to commit future misconduct, Johnston, 368 F. Supp. 3d at 253 (noting that there was "risk of recurrence" of misconduct where defendant was employed as consultant at a "public biopharmaceutical company").  This factor "is of particular importance when considering whether, or to what extent, an officer and director bar is appropriate."  Selden, 632 F. Supp. 2d at 99 (citing Patel, 61 F.3d at 141–42).

The fact that a defendant is currently unemployed is insufficient to establish that he is unlikely to commit future misconduct.  See Bio Def. Corp., 2019 WL 7578525, at *34 (issuing

officer and director bar despite the fact that "the SEC has not presented evidence of . . . how the defendants are currently employed" because the Patel factors "do not constitute a test, but are instead meant to guide [courts] toward a reasoned decision regarding whether an officer/director bar is appropriate"); Weed, 315 F. Supp. 3d at 677 (issuing bar because of egregiousness despite defendant's age and the low probability of filling an executive role after completing his sentence); Bankosky, 2012 WL 1849000, at *3 (noting that the SEC had "adequately demonstrated that it lacks assurances against future misconduct" where unemployed defendant had previously stolen pharmaceutical company employer's material, nonpublic information (citations omitted)); Gunn, 2010 WL 3359465, at *8 n.22 (holding that "the likelihood [defendant's] occupation will present opportunities for future violations [was] high" despite defendant's arguments that he could lose securities license due to securities fraud proceedings).

While Chan is currently unemployed due to his present incarceration, [ECF No. 27 ¶ 10], his profession as a biostatistician could allow him access to an employer's material, nonpublic information in the future.  [ECF No. 34 ¶¶ 1, 11–15].  Thus, the fact that Chan's occupation may place him in a position to commit future misconduct supports the issuance of an officer and director bar.

g)      Conclusion

Taken together, the Patel factors suggest a reasonable likelihood that Chan, unless enjoined, will engage in future violations of securities law.  Still, Chan is a one-time offender who possessed only a relatively modest economic stake in the fraud at issue.  Accordingly, Chan's conduct, while serious, "does not warrant permanent exclusion from the corporate suite." Johnston, 368 F. Supp. 3d at 253.

The Court finds that a five-year bar "should be sufficient to deter any future misconduct and to impress upon [Chan] the gravity of his violations."  Id.  "Such a penalty will strike an

appropriate balance between protecting investors and avoiding an unduly harsh permanent ban

from any future employment . . . ." Id.; see Boey, 2013 WL 3805127, at *3 (imposing five-year

bar against first-time offender on insider trading violation where he profitted $29,576.40).

2.   Permanent Injunction

Under 15 U.S.C. § 78u(d)(1), a court may order "the imposition of injunctive relief

preventing future violations of the securities laws upon a showing that a defendant has violated

the securities laws and that there is a reasonable likelihood of future violations." Weed, 315 F.

Supp. 3d at 676 (citing 15 U.S.C. § 78u(d)(1)); see also Happ, 295 F. Supp. 2d 189, 196 (D.

Mass. 2003) ("Precedent requires a 'reasonable likelihood' of future violations, although it is not

necessary to show an 'imminent threat.'" (quoting Sargent, 329 F.3d at 39)). To assess the

reasonable likelihood of future violations, courts consider (1) "the nature of the violation,

including its egregiousness and its isolated or repeated nature," (2) "whether the defendant will,

owing to [his] occupation, be in a position to violate again," and (3) "whether the defendant[]

[has] 'recognized the wrongfulness of [his] conduct.'" Weed, 35 F. Supp. 3d at 676 (quoting

Sargent, 329 F.3d at 39). None of the factors are determinative. Sargent, 329 F.3d at 39. Chan

does not argue against a permanent injunction. See generally [ECF No. 42].

The Court finds that a permanent injunction enjoining Chan from future violations of 15

U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 is appropriate in this case. First, as noted earlier, see

supra Section III.E.1.a, Chan engaged in an egregious insider trading scheme which lasted for

nearly two years and involved multiple trades. [ECF No. 34 ¶ 11]. As such, this factor weighs

in favor of issuing the injunction. See Weed, 35 F. Supp. 3d at 676 (issuing an injunction where

defendants ran securities fraud scheme four times and were prepared to run scheme for a fifth

time). Second, as a biostatistician, Chan may have access to material, nonpublic information in

the future.  See supra Section III.E.1.f; [ECF No. 1 ¶ 13; ECF No. 34 ¶¶ 9–14].  Finally, though

Chan has seemingly not recognized the wrongfulness of his conduct, the Court does not rely on

this factor given that Chan's criminal case remains on appeal.

### 3.  Civil Penalties

The SEC also asks that the Court impose a civil penalty against Chan under Section 21A

of the Exchange Act, 15 U.S.C. § 78u-1, equal to the amount of Chan's unlawful profits, which

total approximately $68,699.00.[8]  [ECF No. 1 ¶ 8; ECF No. 33 at 17].  "The legislative history

makes clear that Congress intended the ITSA civil penalty to serve as a deterrent mechanism,

since disgorgement alone 'merely restores a defendant to his original position without extracting

a real penalty for his illegal behavior.'"  Ingoldsby, 1990 WL 120731, at *6.  Though 15 U.S.C.

§ 78u-1 allows a court to determine the amount of a civil penalty "in light of the facts and

circumstances," the penalty must "not exceed three times the profit gained or loss avoided as a

result of such unlawful purchase, sale, or communication."  15 U.S.C. § 78u-1(a)(2).

In evaluating the "appropriateness and amount of civil penalties" under 15 U.S.C. § 78u-

1, courts look to factors, such as "(1) the egregiousness of the violations; (2) the isolated or

repeated nature of the violations; (3) the defendant's financial worth; (4) whether the defendant

concealed his trading; (5) what other penalties arise as the result of the defendant's conduct; and

(6) whether the defendant is employed in the securities industry."  Sargent, 329 F.3d at 42.  Chan

does not address the request for civil penalties in his opposition to summary judgement.  See

generally [ECF No. 42].

As noted above, see supra Section III.E.1.a, the first factor, egregiousness of the

violations, weighs against Chan because he committed insider trading in breach of his fiduciary

---

[8] See supra note 4 for an explanation of the SEC's calculation of Chan's profits.

duty to Akebia.  [ECF No. 34 ¶¶ 11–15, 24].  Similarly, because Chan's insider trading violations were part of a scheme that involved multiple trades and lasted nearly two years, the nature of the violation supports civil penalties.  See supra Section III.E.2.a.

"[T]he defendant's net worth and corresponding ability to pay has proven to be one of the most important factors that district courts consider when determining how much of a civil penalty to assess in an insider-trading case."  Gunn, 2010 WL 3359465, at *10 (citing SEC v. Pardue, 367 F. Supp. 2d 773, 777 (E.D. Pa. 2005)); see also SEC v. Druffner, 517 F. Supp. 2d 502, 513 (D. Mass. 2007) ("[C]ourts have considered a defendant's ability to pay when determining the amount of civil penalties to impose or whether to waive civil penalties."), aff'd sub nom. Ficken, 546 F.3d 45 .  This factor weighs against the imposition of a civil penalty where a defendant's net worth is "relatively modest."  See, e.g., Gunn, 2010 WL 3359465, at *10 (finding that defendant's net worth of $47,000.00 weighed against imposition of "substantial civil penalty").  Here, neither party has offered evidence as to Chan's financial worth.[9]  As such, the Court is unable to determine Chan's net worth or ability to pay.

A civil penalty may be inappropriate where a defendant has traded in his own name and accounts and has not attempted to conceal the trading after it has been completed.  Sargent, 329 F.3d at 42 (declining to assess civil penalty where defendant "made no efforts to conceal his isolated transaction"); Gunn, 2010 WL 3359465, at *10 (deciding to issue lesser civil penalty where defendant "used his own accounts" to trade, "did not trade in anyone else's name," and "did not attempt to cover up his trading after the fact").  If a defendant tried to mislead investigators or made trades using the names or accounts of other people, a civil penalty may be

---

[9] The SEC has offered Chan's brokerage statements from August 2015, which are only of marginal use because they do not establish Chan's current net worth.  See [ECF No. 35-7].

appropriate.  See, e.g., SEC v. Lipson, 129 F. Supp. 2d 1148, 1158 (N.D. Ill. 2001) (imposing maximum civil penalty where defendant concealed trades through complex scheme involving lawyers and accounts and also made trades in son's brokerage account), aff'd, 278 F.3d 656 (7th Cir. 2002); SEC v. Falbo, 14 F. Supp. 2d 508, 528 (S.D.N.Y. 1998) (imposing civil penalty where defendant traded "through others' accounts and in his daughter's name."). Here, the SEC does not allege that Chan made any efforts to conceal his trading in Akebia's securities or to mislead investigators.[10]  See generally [ECF No. 33 at 19].  Accordingly, as no evidence has been presented that Chan concealed his trading of the Akebia securities relevant here, the Court finds that this factor weighs against the imposition of a civil penalty.

Finally, the past imposition of other civil or criminal penalties against a defendant for the same conduct generally weighs against the imposition of further penalties.  See, e.g., Sargent, 329 F.3d at 42 (declining to impose civil penalty where defendant "was criminally convicted" and faced one year of probation); Gunn, 2010 WL 3359465, at *10 ("Other penalties that arise as a result of the defendant's conduct weigh most heavily against the imposition of a civil penalty in cases in which those other penalties have already been imposed.").  Here, Chan was sentenced to a term of thirty-six months' imprisonment, a fine of $65,000.00, and restitution in the amount of $153,428.72, for a total of $218,428.72.  [ECF No. 34 ¶ 5].  Because this amount includes a significant fine and the criminal conviction will no doubt impact his future earnings and employment prospects, this factor weighs against the imposition of civil penalties.

---

[10] The Court also notes that the SEC alleges that Chan tipped his wife as to Akebia's material, nonpublic information, resulting in illicit profits of approximately $115,000.00 from her trading in Akebia's securities.  [ECF No. 33 at 18 n.8].  For the reasons expressed previously, see supra note 1, however, the Court declines to consider the trading of Chan's wife, and as relevant here, whether this trading in any way served to conceal trading done by or on behalf of Chan.

Overall, these factors weigh against the imposition of a civil penalty.  Most significantly, the criminal sentence imposed against Chan already includes a significant fine as well as restitution.  Furthermore, in addition to the officer and director ban and the injunction, as discussed below, Chan will also be required to disgorge his ill-gotten gains with prejudgment interest.  Given the facts and circumstances of this case and based on its consideration of the above factors, the Court will not assess a civil penalty against Chan.

### 4.    Disgorgement and Prejudgment Interest

Finally, the SEC requests that the Court issue an order, pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), requiring Chan to pay disgorgement in the amount of $68,699.00 with prejudgment interest of $13,738.00, calculated using the IRS underpayment interest rate.  [ECF No. 1 ¶ 8; ECF No. 33 at 16–17; ECF No. 35 ¶¶ 12–13].

"Disgorgement of ill-gotten gains is routinely granted in insider trading cases."  Happ, 295 F. Supp. 2d at 197.  A district court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged."  SEC v. Esposito, 260 F. Supp. 3d 79, 92 (D. Mass. 2017) (citing Druffner, 802 F. Supp. 2d at 297).  The defendant's alleged "financial hardship is not a ground for denying disgorgement."  Druffner, 802 F. Supp. 2d at 297.  "Disgorgement is an equitable remedy that 'does not serve to punish or fine the wrongdoer, but simply serves to prevent the unjust enrichment.'"  SEC v. Druffner, 802 F. Supp. 2d 293, 297 (D. Mass. 2011) (quoting Happ, 295 F. Supp. 2d at 198).

"The proper amount of disgorgement [in an insider trading case] is generally the difference between the value of the shares when the insider sold them while in possession of the material, nonpublic information, and their market value 'a reasonable time after public dissemination of the inside information.'"  Happ, 392 F.3d at 31 (quoting SEC v. MacDonald, 699 F.2d 47, 54–55 (1st Cir. 1983)).  The amount "need only be a reasonable

approximation of profits causally connected to the violation." Id. (quoting SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989)). "The risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty." Id.; see also MacDonald, 699 F.2d at 55 ("doubts are to be resolved against the defrauding party"). "Once the SEC shows that the disgorgement is a reasonable approximation, the burden shifts to the defendant to demonstrate that the amount of disgorgement is not a reasonable approximation." Happ, 392 F.3d at 31. Chan has not addressed the SEC's request for disgorgement. See generally [ECF No. 42].

Courts may also order that a defendant pay prejudgment interest on disgorged profits "in order to prevent 'defendants from enjoying an interest-free loan on their illicitly-obtained gains.'" Esposito, 260 F. Supp. 3d at 92 (quoting SEC v. Levine, 517 F. Supp. 2d 121, 141 (D.D.C. 2007)). The IRS's interest rate on tax underpayments is generally considered to be an appropriate means of calculating the rate of prejudgment interest because "it reasonably approximates the unjust benefit of the use of ill-gotten money." Id.; Druffner, 802 F. Supp. 2d at 298.

Here, the SEC's request for disgorgement in the amount of $68,699.00, (net profits from the trades plus prejudgment interest of $13,738.00) [11] [ECF No. 33 at 11, 16–17; ECF No. 35 ¶¶ 12–13], which equals "the amount by which [Chan] was unjustly enriched," is "fair and equitable" see Boey, 2013 WL 3805127, at *1 (quoting SEC v. Blatt, 583 F. 2d 1325, 1335 (5th Cir. 1978)). Accordingly, disgorgement in the amount of $68,699.00, plus interest in the amount of $13,738.00, will be ordered.

---

[11] See supra note 4 for an explanation of the SEC's calculation of Chan's profits.

**IV.     CONCLUSION**

Because Chan is collaterally estopped from relitigating his liability under 15 U.S.C.

§ 78j(b) and 17 C.F.R. § 240.10b-5, the SEC's motion for summary judgment, [ECF No. 32], is

GRANTED.  Further, the Court will permanently enjoin Chan from further violations of the

securities laws and from acting as an officer or director of a public company for five years, and

order Chan to disgorge $68,699.00 in profits and $13,738.00 in prejudgment interest.

**SO ORDERED.**

June 8, 2020                                                    /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE